IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE:  ASBESTOS PRODUCTS LIABILITY      Civil Action
        LITIGATION (NO. VI)              No. MDL 875
-----------------------------------------------------X
This document related To: <u>District of Massachusetts</u>

ROBERT GRAZIOSO, as Executor of the Estate of EMILIO P.
GRAZIOSO; and JOSEPHINE GRAZIOSO, Individually,

          Plaintiffs,                Civil Action
                                     No.
     v.                              **05 - 1 1149 NG**

METROPOLITAN LIFE INSURANCE COMPANY
A.W. CHESTERTON COMPANY                  PLAINTIFFS DEMAND
EASTERN REFRACTORIES COMPANY, INC.       <u>A TRIAL BY JURY</u>
ECKEL INDUSTRIES, INC.
OWENS-ILLINOIS, INC.                     RECEIPT #
OWENS-ILLINOIS GLASS COMPANY             AMOUNT $
RAPID-AMERICAN CORPORATION               SUMMONS ISSUED
GARLOCK, INC.                            LOCAL RULE 4.1
INGERSOLL-RAND COMPANY                   WAIVER FORM
JOHN CRANE, INC.                         MCF ISSUED
ZURN INDUSTRIES, INC. f/k/a ERIE CITY IRONWORKS BY DPTY. CLK.
SELBY, BATTERSBY & COMPANY               DATE
B.F. GOODRICH COMPANY
CLEAVER-BROOKS, A DIVISION OF AQUA-CHEM, INC.
FOSTER WHEELER ENERGY CORPORATION
P.S. THORSEN COMPANY OF MASSACHUSETTS
NEW ENGLAND INSULATION COMPANY
DURO-DYNE CORPORATION
BAYER CROPSCIENCE, INC. f/k/a AMCHEM PRODUCTS, INC.
HOPEMAN BROTHERS, INC.
JAMESTOWN METAL MARINE SALES, INC.
AMERICAN LOCKER GROUP INCORPORATED
E.W. HAZARD & ASSOCIATES
E.W. HAZARD & ASSOCIATES, INC.

          Defendants.
-----------------------------------------------------X

     Now comes the plaintiffs, by their attorneys, and

files the following complaint:

     Jurisdiction of this Court exists pursuant to 28

United States Code Section 1332.  The plaintiffs are

1

citizens of the Commonwealth of Massachusetts and the defendants are incorporated in states other than Massachusetts, and their principal place of business is in states other than Massachusetts. The matter arises under the Constitution and under the laws of the United States. The amount in controversy exceeds $75,000 exclusive of interest and costs.

1.   PARTY PLAINTIFFS

Plaintiff, Robert Grazioso, is the Executor of the Estate of Emilio P. Grazioso, and resides at 94 Unity Street, Quincy, Massachusetts 02169. Plaintiff, Josephine Grazioso, is the widow of Emilio P. Grazioso, and resides at 94 Unity Street, Quincy, Massachusetts 02169.

2.   PARTY DEFENDANTS

2A.    The defendant, Metropolitan Life Insurance Company (hereinafter "Metropolitan"), is a foreign corporation which does or has done business in the Commonwealth of Massachusetts.

2B.    The defendant, A.W. Chesterton Company, is a corporation incorporated under the laws of the Commonwealth of Massachusetts having a principal place of business located in the Commonwealth of Massachusetts.

2C.    The defendant, Eastern Refractories Company, Inc., is a corporation organized under the laws of the Commonwealth of Massachusetts with its principal place of business located in the Commonwealth of Massachusetts.

2

2D.    The defendant, Eckel Industries, Inc., is a corporation organized under the laws of the Commonwealth of Massachusetts with a principal place of business located in the Commonwealth of Massachusetts.

2E.    The defendant, Owens-Illinois, Inc., is a corporation incorporated under the laws of the State of Ohio, having a principal place of business outside the Commonwealth of Massachusetts, and has conducted business in the Commonwealth of Massachusetts.

2F.    The defendant, Owens-Illinois Glass Company, is a corporation incorporated under the laws of the State of Ohio, having a principal place of business outside the Commonwealth of Massachusetts and has conducted business in the Commonwealth of Massachusetts.

2G.    The defendant, Rapid-American Corporation, is the legal successor to the Philip Carey Manufacturing Company and is a corporation incorporated under the laws of the State of Delaware, having a principal place of business outside the Commonwealth of Massachusetts, and on information and belief has conducted business in the Commonwealth of Massachusetts itself and through its predecessor corporation.

2H.    The defendant, Garlock, Inc., is a foreign corporation having a principal place of business in the State of New York and has conducted business in the Commonwealth of Massachusetts.

3

2I.    The defendant, <u>Ingersoll-Rand Company</u>, is a New Jersey corporation having a principal place of business in New Jersey and is registered to and has conducted business in the Commonwealth of Massachusetts.

2J.    The defendant, <u>John Crane, Inc.</u>, is a Delaware corporation with a principal place of business in the State of Illinois and has conducted business in the Commonwealth of Massachusetts.

2K.    The defendant, <u>Zurn Industries, Inc. f/k/a Erie City Ironworks</u>, is a foreign corporation with a principal place of business outside the Commonwealth of Massachusetts, and has conducted business in the Commonwealth of Massachusetts.

2L.    The defendant, <u>Selby, Battersby & Company</u>, is a corporation incorporated under the laws of the State of Delaware having a principal place of business located in the State of Pennsylvania, and has conducted business in the Commonwealth of Massachusetts.

2M.    The defendant, <u>B.F. Goodrich Company</u>, is a corporation incorporated under the laws of the State of New York, having a principal place of business in the State of Ohio, and is registered to do business and has conducted business in the Commonwealth of Massachusetts.

2N.    The defendant, <u>Cleaver-Brooks, a Division of Aqua-Chem, Inc.</u>, a successor to Cleaver-Brooks Company, is a foreign corporation with a principal place of business

4

in the state of Wisconsin, which has conducted business in the Commonwealth of Massachusetts.

20.  The defendant,  Foster  Wheeler  Energy Corporation, is a foreign corporation and has conducted business in the Commonwealth of Massachusetts.

2P.  The defendant,  P.S.  Thorsen  Company  of Massachusetts, is a corporation incorporated under the laws of the Commonwealth of Massachusetts, having a principal place of business in South Boston, Massachusetts, and has conducted business in the Commonwealth of Massachusetts.

2Q.  The defendant, New England Insulation Company, is a corporation organized under the laws of the Commonwealth of Massachusetts with a principal place of business at 155 Will Drive, Canton, Norfolk County, Commonwealth of Massachusetts.

2R.  The defendant, Duro-Dyne Corporation, is a New York corporation, having a principal place of business located in Farmingdale, New York, and has conducted business in the Commonwealth of Massachusetts.

2S.  The defendant, Bayer CropScience, Inc. f/k/a Amchem Products, Inc., is a Delaware corporation having a principal place of business in Pennsylvania which has conducted business in the Commonwealth of Massachusetts.

2T.  The defendant, Hopeman Brothers, Inc., is a Delaware corporation having a principal place of business

5

outside the Commonwealth of Massachusetts and has conducted business in the Commonwealth of Massachusetts.

2U. The defendant, <u>Jamestown Metal Corporation</u>, is a foreign corporation having a principal place of business outside the Commonwealth of Massachusetts and has conducted business in the Commonwealth of Massachusetts.

2V. The defendant, <u>American Locker Group Incorporated</u>, is a foreign corporation having a principal place of business in the State of New York and has conducted business in the Commonwealth of Massachusetts.

2W. The defendant, <u>E.W. Hazard & Associates</u>, is a proprietorship with a principal place of business located in New York and has conducted business in the Commonwealth of Massachusetts.

2X. The defendant, <u>E.W. Hazard & Associates, Inc.</u>, is a New York corporation with a principal place of business located in New York and has conducted business in the Commonwealth of Massachusetts.

As used in this Complaint, the terms "defendant", "defendants" or "defendant corporations" shall include the party defendants identified in paragraphs 2A-2X hereof, and their predecessors and successors, which shall include, but is not limited to, any person, corporation, company or business entity: which formed part of any combination, consolidation, merger or reorganization from which any party defendant was created or was the surviving

6

corporation or other entity, or into which any party defendant was merged, consolidated or reorganized; whose assets, stock, property, employees, customers, good will, products or product line was acquired by or from any party defendant; whose patent rights, trademark rights, trade secrets or goodwill was acquired by or from any party defendant; or, which was dominated or controlled by any party defendant to such an extent that said party defendant was the "alter ego" of said corporation.

3.   The plaintiffs' cause of action arises from the defendants:   (a) transacting business in Massachusetts; (b)   contracting   to   supply   and/or   sell   goods   in Massachusetts; (c) doing or causing a tortious act to be done   within   Massachusetts;   and/or,   (d)   causing   the consequence   of   a   tortious   act   to   occur   within Massachusetts.

4.   Plaintiffs' decedent, Emilio P. Grazioso, was exposed to defendants' asbestos and asbestos-containing materials while working as a sheet metal worker at Fore River Shipyard, Quincy, Massachusetts from approximately 1931 to 1979.

5.   During the period of time set forth in Paragraph 4, the plaintiffs' decedent was exposed to and did inhale and/or ingest asbestos dust, fibers, and particles, which dust, fibers, and particles came from the asbestos or asbestos-containing products which were mined, milled,

7

manufactured, fabricated, supplied and/or sold by the
defendant corporations.

6.   The asbestos and asbestos-containing products to
which the plaintiffs' decedent was exposed were mined,
milled, manufactured, fabricated, supplied, and/or sold by
the defendant corporations, acting through their duly
authorized agents, servants, and employees, who were then
and there acting in the course and scope of their
employment and in furtherance of the business of the
defendants.

7.   At all times pertinent hereto, the defendant
corporations were engaged in the business of mining,
milling, manufacturing, fabricating, supplying, and/or
selling asbestos and asbestos-containing products.

8.   At all times pertinent hereto, the asbestos
products were products mined, milled, manufactured,
fabricated, supplied and/or sold by the defendant
corporations and reached the plaintiffs' decedent without
any substantial change in the condition of the product or
products from the time that they were sold.

## COUNT I

### NEGLIGENCE

9.   Plaintiffs reallege the allegations of
Paragraphs 1 through 8 of the Complaint, and by
reference, makes them part of this Count.

10.   It was the duty of the defendant corporations

8

to use and exercise reasonable and due care in the
manufacture, fabricating, testing, inspection,
production, marketing, packaging and sale of their
asbestos and asbestos-containing products.

11.   It was also the duty of the defendant
corporations to provide detailed and adequate
instructions relative to the proper and safe handling
and use of their asbestos and asbestos products, and to
provide detailed and adequate warnings concerning any
and all dangers, characteristics, and potentialities of
their asbestos and asbestos-containing products.

12.   It was the continuing duty of the defendant
corporations to advise and warn purchasers, consumers,
users, and prior purchasers, consumers, and users of all
dangers, characteristics, potentialities and defects
discovered subsequent to their initial marketing or sale
of their asbestos and asbestos-containing products.

13.   Yet, nevertheless, wholly disregarding the
aforesaid duties, the defendant corporations breached
their duties by:  (a) failing to warn the plaintiffs'
decedent of the dangers, characteristics, and
potentialities of their asbestos-containing product or
products when the defendant corporations knew or should
have known that exposure to their asbestos-containing
products would cause disease and injury; (b) failing to
warn the plaintiffs' decedent of the dangers to which he

9

was exposed when they knew or should have known of the
dangers; (c) failing to exercise reasonable care to warn
the plaintiffs' decedent of what would be safe,
sufficient, and proper protective clothing, equipment,
and appliances when working with or near or being
exposed to their asbestos and asbestos-containing
products; (d) failing to provide safe, sufficient and
proper protective clothing, equipment and appliances
with their asbestos-containing products or products; (e)
failing to test their asbestos and asbestos products in
order to ascertain the extent of dangers involved upon
exposure thereto; (f) failing to conduct such research
as should have been conducted in the exercise of
reasonable care, in order to ascertain the dangers
involved upon exposure to their asbestos and
asbestos-containing products; (g) failing to remove the
product or products from the market when the defendant
corporations knew or should have known of the hazards of
exposure to their asbestos and asbestos-containing
products; (h) failing upon discovery of the dangers,
hazards, and potentialities of exposure to asbestos to
adequately warn and apprise the plaintiffs' decedent of
said dangers, hazards, and potentialities discovered;
(i) failing upon discovery of the dangers, hazards, and
potentialities of exposure to asbestos to package said
asbestos and asbestos-containing products so as to

10

eliminate said dangers, hazards, and potentialities; and, (j) generally using unreasonable, careless, and negligent conduct in the manufacture, fabricating, supply, or sale of their asbestos and asbestos-containing products.

14. As a direct and proximate result of the unreasonable, careless, and negligent conduct of the defendant corporations, plaintiffs' decedent, Emilio P. Grazioso, contracted malignant pleural mesothelioma, asbestosis and other asbestos related-disease which substantially contributed to his death on March 6, 2004. Prior to his death, Emilio P. Grazioso, endured great physical pain and suffering, and incurred substantial medical expenses in connection with the treatment of his malignant pleural mesothelioma, asbestosis and other asbestos-related disease. Furthermore, the Estate of Emilio P. Grazioso has incurred funeral expenses and other expenses occasioned by his death and has been deprived of his capacity to earn money during his probable working life.

15. The defendants knew, or with the reasonable exercise of care, should have known of the dangerous characteristics, properties, and potentialities of asbestos and asbestos-containing products.

WHEREFORE, Plaintiff, Robert Grazioso, as Executor of the Estate of Emilio P. Grazioso, demands

11

compensatory damages, plus interest and costs.

## COUNT II

### BREACH OF EXPRESSED AND IMPLIED WARRANTIES

16.   The allegations of Count I are hereby incorporated by reference.

17.   The plaintiffs' decedent was a person whom the defendants could reasonably have expected to use, consume, or be affected by the defendants' asbestos and asbestos-containing products within the meaning of Massachusetts General Laws c. 106, sec. 2-318, as the defendants knew or had reason to know that their asbestos-containing products would be used in the insulation or construction industry and that individuals such as the plaintiffs' decedent would come in contact with such asbestos materials.

18.   The defendants expressly and impliedly warranted that the asbestos and asbestos-containing products described above were merchantable, safe, and fit for their ordinary purposes, and the particular purposes and requirements of plaintiffs' decedent.

19.   The defendants had reason to know of the particular purposes for which their asbestos and asbestos-containing products would be used.

20.   The plaintiffs' decedent relied upon the defendants' skill or judgment in selecting suitable insulation or construction products for safe use.

12

21.  The defendants breached these warranties, in that the asbestos-containing products they sold were not merchantable, safe, suitable, or fit for their ordinary or particular purposes.

22.  As a direct and proximate result of the defendants' breach of warranties, the plaintiffs' decedent, Emilio P. Grazioso, contracted malignant pleural mesothelioma, asbestosis and other asbestos-related disease which substantially contributed to his death on March 6, 2004.  Prior to his death, Emilio P. Grazioso endured great physical pain and suffering, and incurred substantial medical expenses in connection with the treatment of his malignant pleural mesothelioma, asbestosis and other asbestos-related disease.  Furthermore, the Estate of Emilio P. Grazioso has incurred funeral expenses and other expenses occasioned by his death and has been deprived of his capacity to earn money during his probable working life.

WHEREFORE, plaintiff, Robert Grazioso, as Executor of the Estate of Emilio P. Grazioso, demands compensatory damages, plus interest and costs.

### COUNT III

#### CONSPIRACY OR CONCERT OF ACTION:  METROPOLITAN ONLY

23.  Plaintiffs reallege the allegations of Paragraphs 1 through 22 of the Complaint, and by reference, makes them part of this Count.

13

24.   In addition, during the time period set forth
in Paragraph 4, the plaintiffs' decedent was exposed to
and did inhale and/or ingest asbestos dust, fibers, and
particles, which dust, fibers, and particles came from
the asbestos or asbestos-containing products which were
mined, milled, manufactured, fabricated, supplied and/or
sold by the Johns Manville Corporation (hereinafter
"Manville") and/or Raymark Industries, Inc. (hereinafter
"Raymark").

25.   The defendant, Metropolitan Life Insurance
Company, (hereinafter "Metropolitan") together with
Manville, Raymark and other persons and entities, known
and unknown at times relevant hereto, engaged in a
conspiracy or concert of action to inflict injury on the
plaintiffs' decedent, and to withhold, alter, suppress
and misrepresent information about the health effects of
asbestos exposure.  One or more of said conspirators did
cause tortious injury to the plaintiffs' decedent in the
course of or as a consequence of the conspiracy or
concert of action.  At least the following enumerated
acts were undertaken by the conspirators in the course
of and in furtherance of the conspiracy or concert of
action.

> a.   In 1932, Metropolitan, through its agents, Dr.
>       Anthony Lanza and others, assisted Manville
>       with medical examinations of over 1,000

14

employees of Manville's factory in Manville, New Jersey. The report of this study shows that a large percentage of the employees suffered from asbestosis including employees not directly involved in the manufacturing process. This 1932 medical survey was not published in the medical literature and, therefore, was unavailable to scientists studying the issue of asbestos disease. Further collaboration between Manville and Metropolitan continued the cover-up.

b.  Beginning in approximately 1934, Manville, through its agents, Vandiver Brown and Attorney J.C. Hobart, suggested to Dr. Anthony Lanza, Associate Director of Metropolitan, (insurer of Manville and Raymark) that Lanza publish a study on asbestosis in which Lanza would affirmatively misrepresent material facts about the health consequences of asbestos exposure. This was accomplished through intentional deletion of Lanza's description of asbestosis as "fatal" and through other selective editing that affirmatively misrepresented asbestosis as a disease process less serious than it actually is and was known to be. As a result, Lanza's

15

study was published in the medical literature
in this misleading fashion in 1935.  The
conspirators were motivated, in part, to
effectuate this fraudulent misrepresentation
and fraudulent nondisclosure by the desire to
influence proposed legislation to regulate
asbestos exposure and to provide a defense in
lawsuits involving Manville, Raymark and
Metropolitan, as insurer.  Furthermore, upon
information and belief, it is alleged that
Metropolitan, at all times relevant hereto,
had substantial monetary investments in
Manville and Raymark, among other asbestos
product manufacturers and distributors.

c.  In 1936, the conspirators or some of them
including Manville, Raymark, and other
companies entered into an agreement with the
Saranac Laboratories in New York.  Under this
agreement, these conspirators acquired the
power to decide what information Saranac
Laboratories could publish about asbestos
disease and to control in what form such
publications were to occur.  This agreement
gave these conspirators power to affirmatively
misrepresent the results of the work at
Saranac, and also gave these conspirators

16

power to suppress material facts included in
any study. On numerous occasions thereafter,
the conspirators exercised their power to
prevent Saranac scientists from disclosing
material scientific data, resulting in
numerous misstatements of fact being made at
scientific meetings.

d.    By November 1948, or earlier, Manville,
Metropolitan (acting through Dr. Lanza),
Raymark, and others decided to exert their
influence to materially alter and misrepresent
material facts about the substance of research
started by Dr. Leroy Gardner at the Saranac
Laboratories beginning in 1936. Dr. Gardner's
research involved carcinogenicity of asbestos
in mice and also included an evaluation of the
health effects of asbestos on humans with a
critical review of the then-existing standards
of dust exposure for asbestos and asbestos
products.

e.    At a meeting on November 11, 1948, these
conspirators and others intentionally and
affirmatively determined that Dr. Gardner's
work should be edited to specifically delete
material facts about the cancer-causing
propensity of asbestos and the health effects

17

of asbestos on humans and they determined that
only an edited version would be published.
These conspirators thereby fraudulently
misrepresented the risks of asbestos exposure
to the public, in general, and to the class of
persons exposed to asbestos, including the
plaintiffs' decedent.

f.   As a direct result of influence exerted by the
     above-described conspirators, Dr. Arthur
     Vorwald published Dr. Gardner's edited work in
     the Journal of Industrial Hygiene, AMA
     Archives of Industrial Hygiene and
     Occupational Health in 1951 in a form that
     stressed those portions of Dr. Gardner's work
     that the conspirators wished stressed, but
     which omitted references to human asbestosis
     and cancer, thereby fraudulently and
     affirmatively misrepresenting the extent of
     the risks.  The conspirators affirmatively and
     deliberately disseminated this misleading
     Vorwald publication to university libraries,
     government officials, agencies and others.

g.   Such action constituted a material affirmative
     misrepresentation of the material facts
     involved in Dr. Gardner's work and resulted in
     creating an appearance that inhalation of

18

asbestos was a less serious health concern
than Dr. Gardner's unedited work indicated.

26.   Plaintiffs further allege that Metropolitan,
Manville, Raymark and/or their predecessors in interest
knowingly agreed, contrived, combined, confederated and
conspired among themselves to cause plaintiffs' decedent
injuries, diseases, and/or illnesses by exposing
plaintiffs' decedent to harmful and dangerous asbestos-
containing products and/or machinery requiring or
calling for the use of asbestos and/or asbestos-
containing products.  Metropolitan, Manville, and
Raymark further knowingly agreed, contrived, combined,
confederated and conspired to deprive plaintiffs'
decedent of the opportunity of informed free choice as
to whether to use said asbestos-containing products
and/or machinery requiring or calling for the use of
asbestos and/or asbestos-containing products or to
expose themselves to said dangers.  In this connection,
plaintiffs have sued the Metropolitan Life Insurance
Company in its capacity as a conspirator and because it
committed tortious act in concert with others pursuant
to a common design.  Metropolitan, Manville, and Raymark
committed the above-described wrongs by willfully
misrepresenting and suppressing the truth as to the
risks and dangers associated with the use of and
exposure to Manville's and/or Raymark's asbestos-

19

containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

27.  In furtherance of said conspiracies, Metropolitan, Manville, and Raymark performed the following overt acts:

a.  for many decades, Metropolitan, individually, jointly and in conspiracy with Manville and Raymark, have been in possession of medical and scientific data, literature and test reports which clearly indicated that the inhalation of asbestos dust and fibers resulting from the ordinary foreseeable use of said asbestos-containing products and/or machinery requiring or calling for the use of asbestos or asbestos-containing products were unreasonably dangerous, hazardous, deleterious to human health, carcinogenic, and potentially deadly;

b.  despite the medical and scientific data, literature and test reports possessed by and available to Metropolitan, individually and in conspiracy with Manville and Raymark, fraudulently, willfully and maliciously:

(i)  withheld, concealed and suppressed said medical and scientific data, literature,

20

and test reports regarding the risks of
asbestosis, cancer, mesothelioma and
other illnesses and diseases from
plaintiffs' decedent who were using and
being exposed to Manville or Raymark
asbestos-containing products and/or
machinery requiring or calling for the
use of asbestos and/or asbestos-
containing products;

(ii) caused to be released, published and
disseminated medical and scientific data,
literature, and test reports containing
information and statements regarding the
risks of asbestosis, cancer, mesothelioma
and other illnesses and diseases, which
Metropolitan, Manville, and Raymark knew
were either incorrect, incomplete,
outdated and misleading; and

(iii) distorted the results of medical
examinations conducted upon workers such
as plaintiffs' decedent who were using
asbestos-containing products and/or
machinery requiring or calling for the
use of asbestos and/or asbestos-
containing products and being exposed to
the inhalation of asbestos dust and

21

fibers by falsely stating and/or
concealing the nature and extent of the
harm to which workers such as plaintiffs'
decedent suffered; and

(iv) failing to adequately warn the
plaintiffs' decedent of the dangers to
which he was exposed when they knew of
the dangers.

c.   by the false and fraudulent representations,
omissions, failures, and concealments set
forth above, Metropolitan, Manville, and
Raymark, individually, jointly, and in
conspiracy with each other, intended to induce
the plaintiffs' decedent to rely upon said
false and fraudulent representations,
omissions, failures, and concealments, to
continue to expose themselves to the dangers
inherent in the use of and exposure to their
asbestos-containing products and/or machinery
requiring or calling for the use of asbestos
and/or asbestos-containing products.

Said misrepresentations were false, incomplete, and
misleading and constitute negligent misrepresentations
as defined by Sections 311 and 522 of the Restatement
(Second) of Torts.

28.   Plaintiffs' decedent reasonably and in good

22

faith relied upon the false and fraudulent
representations, omissions, failures, and concealments
made by Metropolitan, Manville, and Raymark regarding
the nature of their asbestos-containing products and/or
machinery requiring or calling for the use of asbestos
and/or asbestos-containing products.

29.  As a direct and proximate result of the
conspiracy and concert of action between Metropolitan,
Manville and Raymark, the plaintiffs' decedent was
deprived of the opportunity of informed free choice and
connection with the use of and exposure to Manville and
Raymark's asbestos and asbestos-containing products, and
therefore continued to work with and be exposed to the
co-conspirator corporation's asbestos and asbestos-
containing products and as a result contracted asbestos-
related diseases and other conditions, and/or aggravated
pre-existing conditions, as a result of which the
plaintiffs' decedent suffered a dramatic reduction of
his life expectancy, incurred great mental and physical
pain and suffering, sustained lost wages and lost
earning capacity, incurred medical expenses, and their
enjoyment of life has been greatly impaired, which
damages are continuing in nature.

WHEREFORE, plaintiff, Robert Grazioso, as Executor
of the Estate of Emilio P. Grazioso, demands
compensatory damages, plus interest and costs.

23

## COUNT IV

### UNDERTAKING OF SPECIAL DUTY:  METROPOLITAN ONLY

30.  Plaintiffs reallege the allegations of Paragraphs 1 through 29 of the Complaint, and by reference, makes them part of this Count.

31.  Defendant Metropolitan, through its Policyholders Service Bureau, undertook duties owed by entities which manufactured, sold, supplied, or distributed asbestos-containing products, including Manville and Raymark to plaintiffs' decedent by testing of asbestos workers and the conduct of scientific studies.  These duties included, without limitation, as follows:

    a.    to test fully and adequately for health risks concomitant to the normal and intended use of their products; and

    b.    to instruct fully and adequately in the use of their products so as to eliminate or reduce the health hazards concomitant with their normal or intended use.

In undertaking these duties, Metropolitan knew or should have known that it was providing testing services for the ultimate protection of third persons, including the plaintiffs' decedent.

32.  In both conducting said tests and publishing their alleged results, Metropolitan failed to exercise

24

reasonable care to conduct or publish complete, adequate, and accurate tests of the health effects of asbestos. Metropolitan also caused to be published intentionally false, misleading, inaccurate and deceptive information about the health effects of asbestos exposure. In so acting, Metropolitan breached their special responsibility by failing to exercise reasonable care to protect their undertaking, as described above.

33. The plaintiffs' decedent unwittingly but justifiably relied upon the thoroughness of Metropolitan's tests and information dissemination, the results of which Metropolitan published in leading medical journals.

34. In failing to test fully and adequately for the adverse health effects from exposure asbestos; in delaying the publication of such results; and in falsely editing such results as were obtained; in suppressing relevant medical inquiry and knowledge about those hazards to promote the sale and distribution of asbestos as a harmless product; and in collaborating with entities which manufactured, sold, supplied, or distributed asbestos-containing products, including Manville and Raymark materially to understate the hazards of asbestos exposure, all for pecuniary profit and gain, Metropolitan acted recklessly, wantonly, and

25

in calculated disregard for the welfare of the general public, including the plaintiffs' decedent.

35. As a direct and proximate result of Metropolitan's failures to conduct or accurately publish adequate test or disseminate accurate and truthful information, after undertaking to do so; (i) the risk of harm to the plaintiffs' decedent from asbestos exposure was increased, and (ii) plaintiffs' decedent contracted asbestos-related diseases and other conditions, and/or aggravated pre-existing conditions, as a result of which the plaintiffs' decedent suffered a dramatic reduction of their life expectancy, incurred great mental and physical pain and suffering, sustained lost wages and lost earning capacity, incurred medical expenses, and their enjoyment of life has been greatly impaired, which damages are continuing in nature.

WHEREFORE, plaintiff, Robert Grazioso, as Executor of the Estate of Emilio P. Grazioso, demands compensatory damages, plus interest and costs.

## COUNT V

## WRONGFUL DEATH

36. The allegations of Counts I through IV are hereby incorporated by reference.

37. As a result of working with, around or near others who worked with, around or near asbestos materials supplied by defendants to plaintiffs'

26

decedent's employers, plaintiffs' decedent contracted malignant pleural mesothelioma, asbestosis and other asbestos-related disease, which substantially contributed to his death on March 6, 2004.

38.   Plaintiffs' decedent is survived by his spouse, Josephine Grazioso who by reason of said death has been deprived of income, services, protection, care, society, companionship, comfort, guidance, counsel, and advice of the said plaintiffs' decedent.   In addition, the estate of plaintiffs' decedent has incurred reasonable funeral and burial expenses as a result of the death of plaintiffs' decedent.

WHEREFORE, the plaintiff, Robert Grazioso as Executor of the Estate of Emilio P. Grazioso, demands compensatory and punitive damages, plus interest and costs.

### COUNT VI

### MALICIOUS, WILLFUL, WANTON AND RECKLESS
### CONDUCT OR GROSS NEGLIGENCE

39.   The allegations of Counts I through V are hereby incorporated by reference.

40.   As early as 1929, the defendants, or some of them, possessed medical and scientific data clearly indicating that asbestos and asbestos-containing products were hazardous to the health and safety of Emilio P. Grazioso and others in his position.

27

41.   The defendants, or some of them, during the 1930's, 1940's, 1950's, and 1960's became possessed of voluminous medical and scientific data, studies, and reports, which information conclusively established that asbestos and asbestos-containing products were hazardous to the health and safety of Emilio P. Grazioso and all other persons exposed to the products.

42.   The defendants, or some of them, since the 1930's have had numerous workmen's compensation claims filed against them by former asbestos workers or employees, or knew such claims were filed against asbestos product suppliers and manufacturers.

43.   Prompted by pecuniary motives, the defendants ignored and failed to act upon such medical and scientific data and conspired to deprive the public, and particularly the users, from access to said medical and scientific data, thereby depriving them of the opportunity of free choice as to whether or not to expose themselves to the asbestos products of the defendants.

44.   The defendants acted maliciously, willfully, wantonly, and recklessly, or with gross negligence, by continuing to market their asbestos products, with reckless disregard for the health and safety of plaintiffs' decedent and other users or consumers, knowing the dangerous characteristics and propensities

28

of said asbestos products, but still depriving those affected by the dangers from information about those dangers.

45.   Because the defendants acted maliciously, willfully, wantonly, and recklessly, or with gross negligence, in marketing their hazardous asbestos and asbestos-containing products, in ignoring the medical and scientific data which was available to them, and depriving consumers, users, and the general public from that medical and scientific data, the plaintiffs, Robert Grazioso, as Executor of the Estate of Emilio P. Grazioso; and Josephine Grazioso, Individually is entitled to punitive damages.

WHEREFORE, the plaintiffs, Robert Grazioso, as Executor of the Estate of Emilio P. Grazioso; and Josephine Grazioso, Individually demand punitive damages, in addition to the damages demanded in Counts I, II, and III, plus interest and costs.

## COUNT VII

### LOSS OF CONSORTIUM

46.   The allegations of Counts I through VI are hereby incorporated by reference.

47.   Josephine Grazioso is the widow of Emilio P. Grazioso, and at all pertinent times was the wife of Emilio P. Grazioso.

48.   As a direct and proximate result of the breach

29

of duty and wrongdoing of the defendants and the resultant injury and death of Emilio P. Grazioso, as more particularly described in Counts I through VI, the plaintiff, Josephine Grazioso, suffered a loss of her right to consortium with her husband and the loss of her husband's services, society and companionship, and has suffered great mental anguish.

WHEREFORE, the plaintiff, Josephine Grazioso, demands compensatory damages plus interest and costs.

Plaintiffs demand a trial by jury on all issues.

DATED:    June 3, 2005

Respectfully submitted,

Zon Melerur,

Zoran Malesevic
(BBO #659686)
THORNTON & NAUMES, LLP
100 Summer Street, 30th Fl.
Boston, MA 02110
(617) 720-1333

30

**&JS 44** (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

ROBERT GRAZIOSO, as Executor of the Estate of EMILIO P. GRAZIOSO; and JOSEPHINE GRAZIOSO, Indvidually

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number) (617) 720-1333
Zoran Malesevic
THORNTON & NAUMES, LLP, 100 Summer St., Boston 02110

## DEFENDANTS

METROPOLITAN LIFE INSURANCE COMPANY, et, al

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES(Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☒ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Asbestos Litigation 28 USC, 1332, 1441
Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 75,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE Weiner

DOCKET NUMBER MDL 875 E.D. Pa.

DATE June 3, 2005

SIGNATURE OF ATTORNEY OF RECORD
Zoran Malesevic
THORNTON & NAUMES, LLP

## FOR OFFICE USE ONLY

RECEIPT #_____ AMOUNT_____ APPLYING IFP_____ JUDGE_____ MAG. JUDGE_____

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. Title of case (name of first party on each side only) ROBERT GRAZIOSO, as Executor of the Estate of EMILIO P. GRAZIOSO; and JOSEPHINE GRAZIOSO, Individually

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local rule 40.1(a)(1)).

| | | |
|---|---|---|
| [ ] | I. | 160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT. |
| [X] | II. | 195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.   *Also complete AO 120 or AO 121 for patent, trademark or copyright cases |
| [ ] | III. | 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891. |
| [ ] | IV. | 220, 422, 423, 430, 460, 480, 490, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900. |
| [ ] | V. | 150, 152, 153. |

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.
None

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

    YES [ ]     NO [X]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See 28 USC §2403)

    YES [ ]     NO [X]

    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

    YES [ ]     NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

    YES [ ]     NO [X]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

    YES [ ]     NO [X]

    A.    If yes, in which division do all of the non-governmental parties reside?

    Eastern Division [ ]          Central Division [ ]          Western Division [ ]

    B.    If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

    Eastern Division [X]          Central Division [ ]          Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

    YES [ ]     NO [ ]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME  Zoran Malesevic

ADDRESS Thornton & Naumes, LLP, 100 Summer St., 30th fl., Boston, MA   02110

TELEPHONE NO. (617) 720-1333

(CategoryForm.wpd - 2/15/05)